**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| JUSTIN SULLIVAN and JASON DIAZ, individually and on behalf of all others similarly-situated,<br><br>                    Plaintiffs,<br><br>                  v.<br><br>SPANDEX HOUSE, INC.; NEW YORK THEATRICAL SUPPLY INC.; and SABUDH NATH, in his individual and corporate capacity,<br><br>                    Defendants. | No.:<br><br><br>         **COMPLAINT**<br><br>  **JURY TRIAL DEMANDED** |

## CLASS AND COLLECTIVE ACTION COMPLAINT
## AND DEMAND FOR JURY TRIAL

Plaintiff Justin Sullivan ("Plaintiff" or "Mr. Sullivan") and Plaintiff Jason Diaz

("Plaintiff" or "Mr. Diaz"), individually and on behalf of all others similarly situated

(collectively, "Plaintiffs"), by and through their attorneys, The Ottinger Firm, P.C., as and for

their Complaint in this action against Defendant Spandex House, Inc. (the "Company" or

"Spandex House,"), Defendant New York Theatrical Supply Inc. ("NYTS"), and Sabudh Nath

("Mr. Nath") ("collectively, "Defendants"), allege upon personal knowledge and upon

information and belief as to other matters as follows:

### NATURE OF THE CLAIMS

1.　　Plaintiffs, current and/or former non-exempt employees, employed by

Defendants, bring this action on their own behalf and on behalf of the proposed collective and

Rule 23 classes identified below, against Defendants for violations of: (1) the minimum wage

and overtime requirements under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

("FLSA"); (2) the minimum wage and overtime requirements under New York Labor Law

("Labor Law" or "NYLL"), §§ 650 *et seq*.; (3) the spread of hours requirement under New York State Regulation 12 NYCRR § 142-2.4 ("NYCRR"); (4) the wage statement and notice requirements of NYLL § 195; (5) the prohibition against taking deductions from wages under NYLL § 193; and (6) any other claim(s) that can be fairly inferred from the facts set forth herein.

2. Plaintiffs seek to represent a class made up of all persons who are or have been employed by Defendants as "Warehouse Workers, Cutters, Shipping Workers, and Sample Department Workers," or other similar non-exempt jobs, in New York State during the applicable statute of limitations period under both the FLSA and NYLL.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this case is brought under the FLSA. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the wage violations which gave rise these claims primarily occurred in this District.

5. Plaintiffs' claims are properly consolidated as a single action because their claims involve the same Defendants, arise from the same nexus of facts and circumstances, and involve nearly identical issues of fact and law.

## THE PARTIES

6. Plaintiff Justin Sullivan resides in the Bronx, New York. Mr. Sullivan was employed by Defendants from on or around May 2016 through April 6, 2017. At all relevant times, Plaintiff Justin Sullivan was an "employee" within the meaning of the FLSA and NYLL.

7. Plaintiff Jason Diaz resides in Bergen County, New Jersey. Mr. Diaz was employed by Defendants from on or around September 2016 through November 2016. At all

relevant times, Plaintiff Jason Diaz was an "employee" within the meaning of the FLSA and NYLL.

8.     Spandex House is an incorporated organization, organized and existing under the laws of the State of New York, with its principal place of business located at 263 W 38th Street, New York, NY 10018.  At all relevant times, Spandex House was an "employer" within the meaning of the FLSA and NYLL.

9.     New York Theatrical Supply is an incorporated organization, organized and existing under the laws of the State of New York, with its principal place of business located at 263 W 38th Street, New York, NY 10018.  At all relevant times, New York Theatrical Supply was an "employer" within the meaning of the FLSA and NYLL.

10.    Defendant Mr. Nath resides in Queens County, New York. Upon information and belief, at all relevant times Mr. Nath has been the President of both Spandex House Inc. and New York Theatrical Supply Inc., in active control and management of both Companies, and regulated the employment of persons employed by the Company, including Plaintiffs. At all relevant times, Mr. Nath was an "employer" within the meaning of the FLSA and NYLL.

## COLLECTIVE ACTION ALLEGATIONS

11.    Plaintiffs bring this action on behalf of themselves and other employees similarly situated, as authorized under 29 U.S.C. § 216(b).  The employees similarly-situated are:

> **FLSA Collective Action:** All persons who are or have been employed by Defendants as Warehouse Workers, Cutters, Shipping Workers, Sample Department Workers, or other similar non-exempt jobs, at any location operated by Defendants in the State of New York from three (3) years prior to this action's filing date through the date of the final disposition of this action and who were subject to Defendants' unlawful practice of (i) failing to pay the applicable minimum wage; and (ii) failing to pay applicable overtime premiums for all hours worked in excess of 40 hours per workweek.

12.     Defendants employed Plaintiff Justin Sullivan, Jason Diaz, and the members of the FLSA Collective Action during the time period relevant to the FLSA Collective Action, and classified Plaintiffs as non-exempt from the minimum wage and overtime requirements of the FLSA.

13.     Defendants each meet the definition of an "employer" under the FLSA. By way of examples only, Defendants control how much the FLSA Collective Action members are paid, maintain all-time records for the FLSA Collective Action members, assign and supervise all of the tasks given to the FLSA Collective Action members, and maintain and exercise control as to how the FLSA Collective Action members are to perform their tasks.

14.     Each of the FLSA Collective Action members are or were non-exempt employees entitled to overtime compensation for all hours worked in excess of 40 hours per workweek.

15.     However, at all times during the FLSA Collective Action period, Defendants failed to pay the Collective Action members overtime premiums for all hours worked in excess of 40 per workweek.

16.     Additionally, at all times during the FLSA Collective Action period, Defendants failed to pay the Collective Action members hourly wage for all hours worked at and below 40 per workweek.

17.     Defendants' conduct, as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Action members.

18.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the FLSA Collective Action members, and, as such, notice should be sent to the FLSA Collective Action members.

19.     There are, upon information and belief, more than 40 similarly situated current and former employees of Defendants who were subject to the aforementioned policies in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit.  Those similarly situated individuals are known to Defendants and are readily identifiable through Defendants' records.

## CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following defined class:

> **New York Class:**  All persons who are or have been employed by Defendants as Warehouse Workers, Cutters, Shipping Workers, Sample Department Workers, or other similar non-exempt jobs, at any location operated by Defendants in New York from six (6) years prior to this action's filing date through the date of the final disposition of this action and who were subject to Defendants' unlawful practice of (i) failing to pay the applicable minimum wage; (ii) failing to pay applicable overtime premiums for all hours worked in excess of 40 hours per workweek; (iii) taking deductions from Plaintiffs' earned wages in violation of NYLL § 193; and (iv) failing to furnish wage statements that specifically enumerated certain criteria, as required by NYLL § 195(3).

21.     At all times during the time period relevant to the New York Class, Defendants, as a matter of policy, (i) did not pay Plaintiffs or the New York Class any wages or the applicable overtime premium pay rate for all hours worked in excess of 40 per workweek; (ii) did not pay Plaintiffs or the New York Class spread of hours compensation; (iii) took deductions from Plaintiffs' earned wages based on Defendants' assessment of Plaintiffs' work performance and for other reasons and purposes prohibited by the NYLL; and (iv) failed to furnish correct and accurate wage statements required by the NYLL.

22.     The facts as alleged in Paragraphs 11-18 with respect to the FLSA Collective Action are similarly true for the New York Class during the time period relevant to the New York Class.

23.     Defendants failed to make, keep, and/or preserve accurate records with respect to Plaintiffs and the New York Class and failed to furnish to Plaintiffs and the New York Class an accurate statement and appropriate statement of wages, in violation of the NYLL and supporting New York State Department of Labor regulations.

24.     Numerosity: The proposed New York Class is so numerous that joinder of all members is impracticable. Upon information and belief, during the relevant time period, Defendants employed in excess of 40 people who fall within the New York Class and thus satisfy the numerosity definition of the proposed New York Class.

25.     Typicality: Plaintiffs' claims are typical of the members of the proposed New York Class.  During the New York Class period, Defendants subjected Plaintiffs and the members of the New York Class to same policy and practice of failing to pay them minimum wage and overtime compensation required by the NYLL.

26.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

27.     Adequacy: Plaintiffs will fairly and adequately protect the interests of the proposed New York Class and have retained counsel experienced in FLSA and NYLL class and collective action litigation.

28.     Commonality: Common questions of law and fact exist with respect to all members of the proposed New York Class that predominate over any questions solely affecting individual members of the proposed New York Class, including but not limited to:

a.     Whether Defendants violated the NYLL as alleged herein;

b.     Whether Defendants unlawfully failed to pay the applicable minimum wage to members of the New York Class in violation of the NYLL;

c.     Whether Defendants unlawfully failed to pay appropriate overtime compensation to members of the New York Class in violation of NYLL;

d.     Whether Defendants unlawfully failed to pay spread of hours compensation to members of the New York Class in violation of NYLL;

e.     Whether Defendants took unlawful deductions from wages earned by members of the New York Class in violation of NYLL;

f.     Whether Defendants employed Plaintiffs and the New York Class within the meaning of New York law;

g.     Whether Defendants should be enjoined from continuing the practices that violate the NYLL;

h.     What the proper measure of damages sustained by the New York Class are; and

i.     Whether Defendants' actions were "willful."

29.     The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class could result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendants. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

30.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over any questions

affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' common and uniform policies and practices denied the New York Class the wages to which they are entitled. The damages suffered by the New York Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments of Defendants' practices.

31.     Plaintiffs intend to send notice to all members of the New York Class to the extent required by Rule 23. The names and addresses of the New York Class are available from Defendants.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Plaintiff Justin Sullivan

32.     As outlined above, Defendants employed Plaintiff Sullivan as a Warehouse Worker, Cutter, Shipping Worker, or Sample Department Worker ("Warehouse Worker") from approximately May 2016 through April 6, 2017.

33.     As Warehouse Workers, Plaintiff Sullivan and other members of the proposed collective and Rule 23 classes were primarily responsible for cutting, packing, or shipping fabric.

34.     Plaintiff Justin Sullivan and other members of the proposed collective and Rule 23 classes were also tasked with preparing orders.

35.     Plaintiff Sullivan and other members of the proposed collective and Rule 23 classes were also required to otherwise be working in the warehouse.

36.     At all times during employment, Defendants classified Plaintiff Sullivan as a non-exempt employee entitled to the protections of the FLSA and NYLL.

37.     Defendants compensated Plaintiff Sullivan on an hourly basis.

38.     During most weeks of employment, Defendants required Plaintiff Sullivan to work in excess of 40 hours per week.

39.     By way of example, during a typical workweek, Plaintiff Justin Sullivan generally worked in excess of 51 hours per week, based on the following work schedule:

    i.   Monday, from 9:00 a.m. to 6:30 p.m. (i.e., 9 hours);

   ii.   Tuesday, from 9:00 a.m. to 6:30 p.m. (i.e., 9 hours);

  iii.   Wednesday, from 9:00 a.m. to 6:30 p.m. (i.e., 9 hours);

  iv.   Thursday, from 9:00 a.m. to 6:30 p.m. (i.e., 9 hours);

   v.   Friday, from 9:00 a.m. to 6:30 p.m. (i.e., 9 hours); and

  vi.   Saturday, from 10:30 a.m. to 5:30 p.m. (i.e., 6 hours);

Plaintiff Sullivan was provided a lunch break of 30 minutes daily, except on Saturday, which was unpaid.

40.     Defendants paid no wages at all for hours worked in excess of 40 per workweek.

41.     Mr. Sullivan was required to work every Saturday, beginning at 10:30 a.m., although he had already worked in excess of 40 hours each week.

42.     On December 31, 2016, Plaintiff Sullivan approached Spandex House to inquire into the basis and justification for Defendants denying him payment at the applicable minimum wage and the routine deductions from his earned wages.

43.     When Defendants refused to answer Plaintiff Sullivan, he continued to ask Defendants on a monthly basis. Spandex House responded by terminating Plaintiff Sullivan employment in reprisal for his inquiry and objection to Defendants' pay practices.

//

//

**Plaintiff Jason Diaz**

44.     As outlined above, Defendants employed Plaintiff Jason Diaz as a Warehouse Worker from approximately mid-September 2016 through mid-November 2016.

45.     As a Warehouse Worker, Plaintiff Diaz and other members of the proposed collective and Rule 23 classes were primarily responsible for cutting, packing, or shipping fabric.

46.     At all times during employment, Defendants classified Plaintiff Diaz as a non-exempt employee entitled to the protections of the FLSA and NYLL.

47.     Defendants compensated Plaintiff Diaz on an hourly basis.

48.     During most weeks of employment, Defendants required Plaintiff Diaz to work in excess of 40 hours per week.

49.     By way of example, during a typical workweek, Plaintiff Jason Diaz generally worked in excess 58.5 hours, based on the following work schedule:

   i.     Monday, from 6:00 a.m. to 5:00 p.m. (i.e., 10.5 hours);

   ii.    Tuesday, from 6:00 a.m. to 5:00 p.m. (i.e., 10.5 hours);

   iii.   Wednesday, from 6:00 a.m. to 5:00 p.m. (i.e., 10.5 hours);

   iv.    Thursday, from 6:00 a.m. to 5:00 p.m. (i.e., 10.5 hours);

   v.     Friday, from 6:00 a.m. to 5:00 p.m. (i.e., 10.5 hours); and

   vi.    Saturday, from 7:00 a.m. to 2:00 p.m. (i.e., 6 hours);

Plaintiff Diaz was provided an unpaid lunch break of 30 minutes daily, except on Saturday.

50.     Defendants paid no wages at all for hours worked in excess of 40 per workweek.

51.     Mr. Diaz was required to work every Saturday, beginning at 10:30 a.m., although he had already worked in excess of 40 hours each week.

52.     Defendants also took unlawful deductions from Plaintiff Diaz's earned wages for failing to satisfy certain performance measures imposed by Defendants.  For example, Plaintiff Diaz lost his personal mobile phone in a package when it was shipped to a customer accidentally. Defendants deducted from Mr. Diaz's paycheck the customer's shipping fees as well as the shipping cost of returning his mobile phone. Mr. Diaz was deducted three days of pay for this error.

53.     In or around October 2016, Plaintiff Diaz approached Defendants to inquire into the basis and justification for Defendants' routine deductions from his earned wages.

54.     Defendants responded by terminating Plaintiff Jason Diaz' employment in reprisal for his inquiry and objection to Defendants pay practices.

### Defendant Spandex House Inc.

55.     Defendant Spandex House Inc. is the employing entity by which both plaintiffs were hired and managed.

56.     Defendant Spandex House Inc. was the name of the store in which Plaintiffs worked.

57.     Defendant Spandex House Inc. had its logo with the title "Spandex House" at the front of the store in which Plaintiffs worked.

58.     Defendant Spandex House Inc. had its name on business cards held by Plaintiffs' superiors.

59.     Plaintiffs were told when hired that they were working for Spandex House.

60.     When other employees answered the phone at Plaintiff's place of work, they would identify that the caller had called "Spandex House."

61. Defendant Spandex House Inc. is located at the very same address as New York Theatrical Supply Inc.

62. Defendant Spandex House Inc. is owned and/or operated by Defendant Sabudh Nath, the same person who owns and/or operates New York Theatrical Supply Inc.

## Defendant New York Theatrical Supply Inc.

63. Defendant New York Theatrical Supply Inc. is the entity that appears by name in Plaintiffs' Forms W-2.

64. Defendant New York Theatrical Supply Inc. was the entity that paid Plaintiffs' wages; it is culpable for the unlawful withholding and nonpayment of Plaintiffs' wages.

65. Defendant New York Theatrical Supply Inc. also has its logo with the title "N.Y. Theatrical Supply" at the front of the store in which Plaintiffs worked.

66. Defendant New York Theatrical Supply Inc. is located at the very same address as Spandex House Inc.

67. Defendant New York Theatrical Supply Inc. is owned and/or operated by Defendant Sabudh Nath, the same person who owns and/or operates Spandex House Inc.

## Defendant Sabudh Nath

68. Defendant Sabudh Nath is owner, operator, and/or president of both Spandex House Inc. and New York Theatrical Supply Inc.

69. Defendant Sabudh Nath personally hired Plaintiffs.

70. Defendant Sabudh Nath regularly visited the work premises of Plaintiffs.

71. Defendant Sabudh Nath would issue punishments to employees when he so desired.

72.     Defendant Sabudh Nath terminated the employment of Plaintiffs and other employees.

## FIRST CAUSE OF ACTION
### (FLSA: Unpaid Minimum Wage)

73.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

74.     As outlined above, during the relevant time period, Defendants' practices violated the provisions of the FLSA regarding payment of a minimum wage to Plaintiffs and the members of the FLSA Collective Action by, among other things, failing to pay them the applicable minimum wage for all hours worked.

75.     Accordingly, Plaintiffs and the members of the FLSA Collective Action are entitled to the difference between the wages paid by Defendants and the FLSA minimum wage as damages for Defendants' violations of the FLSA's minimum wage provisions.

76.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

77.     Plaintiffs and the members of the FLSA Collective Action seek recovery of their lost wages, as well as attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

//

//

## SECOND CAUSE OF ACTION
### (FLSA: Failure to Pay Overtime Compensation)

78.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

79.     During the relevant time period, Plaintiffs and the members of the FLSA Collective Action worked in excess of 40 hours per workweek and, because of Defendants' above-outlined violations of the FLSA, were not paid appropriate overtime compensation.

80.     Despite the hours worked by Plaintiffs and the members of the FLSA Collective Action, Defendants willfully, in bad faith, and in knowing violation of the FLSA, failed and/or refused to pay Plaintiffs and the members of the FLSA Collective Action appropriate overtime compensation.

81.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C §§ 216(b) and 255(a).

82.     Plaintiffs and the members of the FLSA Collective Action seek recovery of their unpaid overtime wages, as well as attorneys' fees and costs to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b), and such other legal and equitable relief as the Court deems just and proper.

## THIRD CAUSE OF ACTION
### (NYLL: Unpaid Minimum Wage)

83.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

84.     As outlined above, Defendants' pay practices failed to pay Plaintiffs and the members of the New York Class a minimum wage required by the NYLL.

85.     Accordingly, Plaintiffs and the members of the New York Class are entitled to the difference between the NYLL minimum wage and the wages paid by Defendants as damages for Defendants' violations of the NYLL and Minimum Wage Order's minimum wage provisions.

86.     The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis within the meaning of NYLL § 198, and as a result Plaintiffs and the members of the New York Class are entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

87.     Plaintiffs and the members of the New York Class also seek to have their reasonable attorneys' fees and costs paid by Defendants, as provided by the NYLL.

**FOURTH CAUSE OF ACTION**
**(NYLL: Failure to Pay Overtime Compensation)**

88.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

89.     During the relevant time period, Plaintiffs and the members of the New York Class worked in excess of 40 hours per workweek and, because of Defendants' above-outlined violations of the NYLL, were not paid appropriate overtime compensation.

90.     Despite the hours worked by Plaintiffs and the members of the New York Class, Defendants willfully, in bad faith, and in knowing violation of the NYLL, failed and/or refused to pay them appropriate overtime compensation.

91.     The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis within the meaning of NYLL § 198, and as a result Plaintiffs and the members of the New York Class are entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

92.     Plaintiffs and the members of the New York Class also seek to have their reasonable attorneys' fees and costs paid by Defendants, as provided by the NYLL.

## FIFTH CAUSE OF ACTION
### (NYLL: Unlawful Deductions)

93.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

94.     During the relevant time period, as set forth above, Defendants unlawfully deducted portions of Plaintiffs' earned wages for purposes that were not for Plaintiffs' benefit and were outside the enumerated categories of permissible deductions from employee wages under NYLL § 193.

95.     Despite the hours worked by Plaintiffs and the members of the New York Class, Defendants willfully, in bad faith, and in knowing violation of the NYLL, failed and/or refused to pay them the requisite compensation.

96.     The foregoing conduct, as alleged, constitutes a willful violation of the NYLL without a good faith basis within the meaning of NYLL § 198, and as a result Plaintiffs and the members of the New York Class are entitled to liquidated damages and such other legal and equitable relief as the Court deems just and proper.

97.     Plaintiffs and the members of the New York Class also seek to have their reasonable attorneys' fees and costs paid by Defendant, as provided by the NYLL.

## SIXTH CAUSE OF ACTION
### (12 N.Y.C.R.R. § 142-2.4: Spread of Hours)

98.     Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs, as if fully set forth herein.

99. At all relevant times, all Defendants are or were "employers" within the meaning of 12 N.Y.C.R.R. §§ 142.

100. At all relevant times, Plaintiffs are or were "employees" within the meaning of 12 N.Y.C.R.R. §§ 142.

101. At all relevant times, Plaintiffs are not or were <u>not</u> exempt from the provisions of 12 N.Y.C.R.R. §§ 142.

102. Defendants failed to compensate Plaintiffs the legally mandated spread of hours pay for days in which they worked in excess of ten (10) hours or worked split shifts.

103. These practices were willful and lasted for the duration of the relevant time periods.

104. These practices are in violation of 12 N.Y.C.R.R. § 142-2.4.

**SEVENTH CAUSE OF ACTION**
**(NYLL: Failure to Furnish Compliant Wage Statements)**

105. Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs, as if fully set forth herein.

106. During the relevant time period, Defendants failed to furnish Plaintiffs and the members of the New York Class with accurate wage statements that specifically enumerated certain criteria, as required by NYLL § 195(3).

107. Defendants' violation of the NYLL was willful and, as a result, Defendants are liable to Plaintiffs and the members of the New York Class for $250 per violation, for up to $5,000 per class member.

108.     In addition to statutory penalties, Plaintiffs and the members of the New York Class are entitled to recover from Defendants reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

### EIGHTH CAUSE OF ACTION
**(On Behalf of Plaintiff Justin Sullivan)**
**(NYLL: Retaliation)**

109.     Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs, as if fully set forth herein.

110.     Mr. Sullivan engaged in a protected activity in December 31, 2016, by complaining to Defendants about Defendants' improper pay practices.

111.     Defendants took adverse action against Mr. Sullivan by terminating his employment on or about April 6, 2017.

112.     There is a clear causal nexus between Mr. Sullivan's protected activity and his termination.

113.     Accordingly, Defendants retaliated against Mr. Sullivan for engaging in a protected activity in violation of Labor Law § 215.

114.     Plaintiff Sullivan is therefore entitled to an award of damages to compensate Plaintiff Sullivan for all monetary and/or economic harm, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment; an award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff Sullivan; and an award of punitive damages, each in amounts to be determined at trial, plus pre- and post-judgment interest, as well as Plaintiff Sullivan's reasonable attorneys' fees to the fullest extent permitted by law.

//

### NINTH CAUSE OF ACTION
### (On Behalf of Plaintiff Jason Diaz)
### (NYLL: Retaliation)

115.    Plaintiffs allege and incorporate by reference all allegations in all preceding paragraphs, as if fully set forth herein.

116.    Mr. Diaz engaged in a protected activity in or around October 2016 by complaining to Spandex House about Defendants' improper pay practices.

117.    Defendants took adverse action against Mr. Diaz by terminating his employment in or around November 2016.

118.    There is a clear causal nexus between Mr. Diaz's protected activity and his termination.

119.    Accordingly, Defendants retaliated against Mr. Diaz for engaging in a protected activity in violation of Labor Law § 215.

120.    Plaintiff Diaz is therefore entitled to an award of damages to compensate Plaintiff Diaz for all monetary and/or economic harm, including, but not limited to, the loss of past and future income, wages, compensation, and other benefits of employment; an award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff Diaz; and an award of punitive damages, each in amounts to be determined at trial, plus pre- and post-judgment interest, as well as Plaintiff Diaz' reasonable attorneys' fees to the fullest extent permitted by law.

//

//

//

//

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and all members of the proposed FLSA Collective Action and New York Class, pray for the following relief:

A.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B.      A judgment declaring that the practices complained of herein are unlawful and in violation of FLSA and New York Labor Law;

C.      That the Court determines that this action may proceed as a collective action pursuant to 29 U.S.C. § 216(b);

D.      That the Court determines that this action may proceed as a class action pursuant to Fed. R. Civ. P. 23.

E.      An award to Plaintiffs for all damages which Plaintiffs have sustained as a result of Defendants' conduct, including back pay, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants' improper practices;

F.      An award to Plaintiffs of compensatory damages, including but not limited to damages for emotional pain and suffering where appropriate;

G.      An award to Plaintiffs of the amount of unpaid wages, including interest thereon, and penalties;

H.      An award to Named Plaintiffs of all applicable statutory damages to which they are entitled;

I.      An award to Plaintiffs of exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct where appropriate;

J.      An award to Plaintiffs for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees;

K.      An award to Plaintiffs of pre-judgment and post-judgment interest, as provided by law; and

L.      Any other and further relief as this Court finds necessary and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury as to all issues so triable.


Dated:  August 4, 2017
          New York, New York                          Respectfully submitted,

                                                      THE OTTINGER FIRM, P.C.


                                              By: _____
                                                      Benjamin Weisenberg
                                                      401 Park Avenue South
                                                      New York, New York 10016
                                                      Telephone: (212) 571-2000
                                                      Fax: (212) 571-0505
                                                      benjamin@ottingerlaw.com

                                                      *COUNSEL FOR PLAINTIFFS AND THE PROPOSED CLASSES*