

401 Park Avenue South
New York, NY 10016
(212) 571-2000

535 Mission Street
San Francisco, CA 94105
(415) 262-0096

Benjamin D. Weisenberg
Direct: 212.256.1902
benjamin@ottingerlaw.com

February 5, 2018

**BY ECF ONLY**
The Hon. Jesse M. Furman
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    *Sullivan et al v. Spandex House, Inc. et al*, No. 17-cv-05929

Dear Judge Furman

As Your Honor is aware, The Ottinger Firm, P.C. (the "Firm") represents Plaintiffs[1] in the above-referenced action. We are pleased to report that the parties have entered into a proposed settlement agreement ("Agreement"[2]) that would dispose of all claims in this action. We therefore write to respectfully provide the Court with the following explanation of the basis for the proposed settlement and why it should be approved as fair and reasonable.

## I.   Introduction and Statement of the Case

Defendants Spandex House, Inc., New York Theatrical Supply, Inc. and Sabudh Nath (collectively, "Defendants"), operate a warehouse that supports their business' purpose of providing Spandex and Lycra® available for purchase in the New York metro area. The Putative Collective Members are Warehouse Workers, Cutters, Shipping Workers, and Sample Department Workers (herein, "Warehouse Workers"), currently and/or formerly employed by Defendants in their New York warehouse from August 4, 2011, to February 5, 2018. (*See* Agreement, Ex A. ¶ 2.17.) There are 48 Putative Collective Members. (*Id*.)

On August 4, 2017, Plaintiffs filed a Collective and Class Action Complaint. (ECF Dkt No. 1). Plaintiffs allege violations of the overtime requirements of the FLSA, 29 U.S.C. § 201, *et seq*., the minimum wage and overtime requirements under the NYYL, § 650 *et seq*., the spread of hours requirement under New York City Rules and Regulations, 12 NYCRR § 142-2.4 ("NYCRR") and the record keeping requirements of NYLL § 195 *et seq*. Defendants retained

---

[1]     "Plaintiffs" include the two Named Plaintiffs — Mr. Justin Sullivan and Mr. Jason Diaz — together with Putative Collective Members.

[2]     Settlement Agreement attached as **Exhibit A**.

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 2 of 8

Mr. Scott Lucas of the Law Offices of Scott A. Lucas ("Mr. Lucas"), as their counsel in this matter. Defendants filed their Answer on September 28, 2017 (ECF Dkt No. 15), disputing material allegations in the Complaint, denying liability and objecting to this matter proceeding as a Collective Action. (*Id.*)

Plaintiffs' counsel and Defendants' counsel conducted numerous phone calls starting at an early stage in these proceedings. Plaintiffs' counsel and Defendants' counsel identified that the main points of contention include, but are not limited to, the actual number of hours worked by each Putative Collective Member during any one work week, whether each Putative Collective Member was paid their regular rate and premium pay for each overtime hour worked during any one work week and whether unique questions of fact and/or law prohibit this matter from proceeding as a class or collective action. The result of the phone calls was an agreement to meet in person on October 12, 2017, to exchange informal discovery. During the in-person meeting, the Firm and Mr. Lucas agreed to conduct a voluntary, private mediation on a later date convenient to the parties. The parties exchanged the names of potential neutral, third-party mediators and the parties were able to agree upon Ms. Vivian Berger as the mediator in this matter.

On December 19, 2017, a private mediation session was held with Ms. Vivian Berger serving as the neutral, third party mediator. At the mediation session, the parties presented fact and legal arguments to Ms. Berger. The parties were able to competently address the strengths and weaknesses of the other party's respective claims and defenses. Plaintiffs' highlighted the testimonial evidence provided by the Named Plaintiffs and Defendants' failure to maintain the required time and pay records. Defendants' highlighted the unique questions of fact raised by each Putative Collective Member, the difficulty Plaintiff will face in accurately proving damages without time and pay records and the impact of the Named Plaintiffs' start dates on the possibility of achieving certification for all 48 Putative Collective Members.

In light of the risk Plaintiffs face in achieving certification, and the difficulty in establishing their actual hours worked without the assistance of accurate records, the parties reached the Agreement that established the Gross Settlement Fund based upon two negotiated assumptions: (1) the parties will assume each Putative Collective Member worked 11 hours of overtime every workweek, and (2) the parties will assume Defendants' paid each Putative Collective Member their regular rate for every overtime hour but not their half-hour of premium pay for every hour over forty. Mr. Sullivan's work schedule as alleged in ¶ 39 of the Complaint is the basis for the 11 hours per week assumption.

## II.    Settlement Terms

The Agreement makes available a maximum of $515,212.26 (the "Fund") to fully resolve and satisfy any and all amounts to be paid to Participating Collective Members, the Service Awards, attorneys' fees and costs and the Settlement Claims Administrator's fees and costs. The Agreement does not contain a confidentiality provision or a non-disparagement provision. The

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 3 of 8

release of claims is limited to the FLSA and NYLL claims at issue in this litigation, and if a Putative Collective Member does not participate by returning their claim form and/or endorsing their settlement check, he or she will not release any claims. Defendants will not forfeit (i.e., will retain) any portion of the Fund not used to satisfy the terms of the Agreement.

### III.   The Proposed Settlement is Fair and Reasonable

When parties privately settle FLSA claims with prejudice, the settlement must be approved by a district court or the Department of Labor. (*See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015), *cert. denied,* 136 S. Ct. 824 (2016).) To warrant such approval, the parties must satisfy the court that their agreement is "fair and reasonable." (*Flores v. Food Express Rego Park, Inc.*, No. 15-cv-1410, 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016).)

"In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including, but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel, and (5) the possibility of fraud or collusion." ((*Wolinsky v. Scholastic, Inc.*, 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012)(internal citations omitted).) Factors that weigh against approving a settlement include: (1) the presence of other employees situated similarly to the claimant, (2) a likelihood that the claimant's circumstances will recur, (3) a history of FLSA non-compliance by the employer or others in the same industry or geographic region, and (5) the desirability of a mature record and appoint determination of the governing factual or legal issues to further develop the law. ((*Id.* at 336.)(internal citations omitted).)

#### a.   Plaintiffs' Range of Possible Recovery Supports Settlement Approval

Calculating the maximum "Base Damages," in this case is difficult because the number of overtime hours actually worked by each Putative Collective Member is in dispute, and no accurate time or pay records exist to assist the parties in their calculations. Defendants acknowledge they failed to maintain complete and accurate time and pay records, but the allegation that Defendants failed to pay Plaintiffs their regular rate for every hour worked over forty in any given workweek is strongly denied. Plaintiffs' acknowledge that they would likely be relying upon testimonial evidence alone in support of the allegation, and that it is likely a unique question of fact individual to each Putative Collective Member.

The parties reached a negotiated compromise that assumes each Putative Collective Member worked 11 hours of overtime during each workweek. The 11 hours per workweek is based on Mr. Sullivan's schedule as alleged in ¶ 39 of the Complaint. Plaintiffs' have discussed this assumption at length and are confident that this assumption cuts in favor of the Putative Collective Members, because Mr. Sullivan's schedule is representative of the Putative Collective

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 4 of 8

Members' schedules and there were likely some weeks in which all Putative Collective Members, for differing, independent reasons, worked less than 11 hours of Overtime in a workweek.

Defendants provided Plaintiffs the unique start dates, end dates (if applicable) and rates of pay for each individual Putative Collective Member. Plaintiffs then invested a significant amount of time and resources to create a comprehensive damages chart that calculated the Base Damages for each Putative Collective member (*i.e.*, # of weeks worked x 11 x unique rate of pay x .5 = Base Damages). Plaintiffs then totaled each individual Putative Collective Member's Base Damages ("Collective Base Damages), and the total is, $164,431.13. Defendants have agreed to pay a 100% Liquidated Damages penalty (*i.e.*, another $164,431.13). (*See Wolinsky*, 900 F.Supp.2d at 334.) Defendants have also agreed, after strenuous arms-length negotiations, to pay $186,350 in NYLL § 195 *et seq.* penalties. The Fund is made up of these three numbers (*i.e.*, $512,21.26).

Plaintiffs' likely minimum recovery is the applicable NYLL § 195(3) penalties in that Defendant acknowledges it failed to provide statutorily sufficient wage statements with every payment of wages. Plaintiffs' maximum *plausible* recovery is their overtime premium, liquidated damages and all NYLL §195 *et seq.* penalties.

Plaintiffs' recovery of 11 hours of premium pay per work week, plus 100% liquidated damages penalties and a substantial portion of their NYLL § 195 *et seq.* penalties under the Agreement represents a substantial percentage of the plausible maximum possible recovery and weighs strongly in favor of the Settlement.

### b. Plaintiffs' Avoidance of Their Burden to Establish their Respective Claims and Their Litigation Support Settlement Approval

The settlement amount is reasonable in light of the considerable risks Plaintiffs face in achieving certification, maintaining certification and securing an outcome that is better than or even equal to the Agreement. Defendants failed to maintain accurate time and pay records. Plaintiffs' evidence in this case will be mostly testimonial in nature.

Defendants have and will argue unique questions of fact exist as to (i) how many hours Putative Collective Members actually worked during any given workweek, (ii) whether Defendants failed to pay each individual Putative Collective Member their regular rate and premium pay for each overtime hour worked and (iii) whether some of the Putative Collective Members' different job titles and duties will defeat Plaintiffs' allegation that the Putative Collective Members are "similarly situated." Defendants argued during the mediation that Plaintiffs' testimonial evidence may not be considered sufficient "generalized proof" to maintain a Collective Action. (*See, e.g., Mendez v. U.S. Nonwovens Corp.,* No. 12 Civ. 5583 (ADS) (SIL), 2016 WL 1306551, at *3-7 (E.D.N.Y. Mar. 31, 2016) (decertifying the collective as the plaintiffs failed to show that their claims for overtime were supported by "generalized proof"); *Scott v. Chipotle Mexican*

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 5 of 8

*Grill, Inc.*, No. 12 Civ. 8333 (ALC) (SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (decertifying the collective).)  Defendants also argued that because Plaintiffs worked for less than a year, Plaintiffs cannot represent a class for unpaid wages accruing before February 2016 (the earlier of the two Named Plaintiffs' start dates). (*See Roach v. T.L. Cannon Corp.*, 2015 WL 10818750, at *6 (N.D.N.Y. 2015) ("Given the six-year statute of limitations, the earliest date the class period could commence is May 19, 2004. Because Longo was the earliest employed member of the named plaintiffs with a start date in April 2005, this is the earliest that a named plaintiff has standing to assert the claims in this matter."); *Rendon v. Global Technical Solutions, LLC*, 2015 WL 8042169, at *10 (E.D.La. 2015) ("Plaintiff does not provide any rationale for the three-year time span at this time. Therefore, the time span appears arbitrary. Accordingly, the Court shall limit the class period to the dates worked by Rendon.").)

The Agreement provides each Putative Collective Member a means to recover a substantial portion, if not all, of their premium pay, a 100% liquidate damages penaltiy and a subtantial portion of their NYLL § 195 e*t seq.* statutory penalties without have to face the risk of failing to achieve, or failing to mainatin, certification through trial and appeal and/or failing to prove their damages.

In light of the significant litigation risks Plaintiffs face, the Agreement's terms weigh heavily in favor of approving this Settlement as fair and reasonable.

### c. Resolution of This Action at This Stage of the Litigation and on the Basis of Arm's-Length Bargaining Between Counsel Supports Settlement Approval

The parties' proposed Agreement is the product of protracted arm's-length bargaining between experienced counsel and is absence of any fraud or collusion.  The Agreement was reached with the assistance of an experienced, neutral mediator who is a member of the panel for both the Southern and Eastern Districts of New York.  The Agreement avoids the unnecessary costs and difficulties of further litigation.  Additional discovery and/or motion practice is unlikely to provide any addition detail useful to the parties because Defendants acknowledge that they failed to maintain accurate time or pay records.

### d. Review of the Negative *Wolinsky* Factors Supports Settlement Approval

Defendants have certified to Plaintiffs that the 48 Putative Collective Members incorporate all of Defendants' arguably "similarly situated" employees despite Defendants having strong arguments against having to proceed in this action on either a class or collective action basis.  The Agreement provides a meaningful remedy for any of the "similarly situated" Putative Collective Member that choose to participate.

Defendants have retained competent employment counsel so that they do not incur additional liabilities in the future, and they have not been party to a FLSA or NYLL Class or Collective Settlement in the past that they have subsequently violated and/or repeated their past offense.

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 6 of 8

The parties are not aware of any reason why a more "mature record" would need to be developed in this action.

A review of the Negative *Wolinksy* Factors weighs heavily in favor of approving this Settlement as fair and reasonable.

    **e. Plaintiffs' Counsel's Request for Attorneys' Fees Equal to One-Third of the Fund Is Reasonable and Supports Settlement Approval**

The Firm is requesting attorneys' fees equal to one-third of the fund, or $171,565.68, and reimbursement of $3,298.25 in litigation costs and out of pocket expenses incurred by the Firm in prosecuting and successfully resolving this litigation. (*See* Agreement, Ex A ¶ 4.2(a); *See also* Notice Packet, Ex. B ¶ 5.)

There are two ways to compensate attorneys for successful prosecution of statutory claims: the lodestar method and the percentage of the fund method. (*See McDaniel v. Cnty. Of Schenectady*, 595 F. 3d 411, 417 (2d Cir. 2010).) In wage and hour class or collective action lawsuits, courts often award attorneys' fees as a percentage of the total fund in lieu of using the lodestar-type method. (*Wolinsky*, 900 F.Supp.2d at Footnote 2; *see also Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *6; *see also Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 102 (E.D.N.Y. 2015) ("Public policy favors a common fund attorneys' fee method in wage and hour class action litigation."); s*ee also Garcia v. Pancho Villa's of Huntington Village, Inc.,* 2012 WL 5305694, at *7 ("[t]he trend in this Circuit is to use the percent of the fund method to compensate attorneys in common fund cases"); *see also Puglisi v. T.D. Bank, N.A,* 2015 WL 4608655, at *1 (awarding class counsel one-third of the common fund).)

Courts tend to prefer the percentage method over the lodestar method to compensate attorneys for successful prosecution of statutory claims, because the percent method is closely aligned with market practices and "is intended to mirror the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients," (*Chavarria v. New York Airport Service, LLC,* 875 F. Supp. 2d 164, 177 (E.D.N.Y 2012.)), the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation in order to increase their billable hours, (*See Beckman v. Keybank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013); *see also Costagna v. Madison Square Garden, L.P.*, No. 09 Civ. 10211, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending the plaintiffs' attorneys for negotiation early settlement), and the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Asare v. Change Grp. of N.Y., Inc.,* No. 12 Civ. 3371 (CM), 2013 WL 6144764, at *17 (S.D.N.Y. Nov. 18, 2013) (quoting *Savoie v. Merchants Bank*, 166 F.3d 456, 461 n.4 (2d Cir. 1999)). Judges in the Eastern and Southern Districts of New York have consistently awarded 1/3 of the fund. *See, e.g., Willix*, 2011 WL 754862, *6 (awarding one-third of $7.675 million settlement fund in FLSA and NYLL wage and hour

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 7 of 8

action); *Karic v. Major Auto. Companies, Inc.*, No. 09 Civ. 5708 (ENV) (CPL), 2015 WL 9433847, at n.9 (E.D.N.Y. Dec 22, 2015,) *report and recommendation adopted sub nom. Karic v. The Major Auto. Companies, Inc.,* No. 09 civ. 5708 (ENV) (CLP), 2016 WL 323673 (E.D.N.Y. Jan. 26, 2016) (listing cases); *Puglisi,* 2015 WL 4608655, at *1 (awarding $3.3 million in attorney's fees which is one-third of the total fund); *Kochilas v. Nat'l Merch. Servs., Inc.,* No. 14 Civ. 00311 (LB), 201 WL 5821631, at *4 (E.D.N.Y. Oct. 2, 2015) (awarding one-third of the total settlement fund); *Hernandez*, 306 F.R.D. at 102 (awarding one-third of $500,000 settlement); *Toure*, 2012 WL 3240461, at *5 (awarded one-third of $4.45 million fund in misclassification case.)

Plaintiffs' Counsel's fees are also consistent with the retainer agreements entered into by the Named Plaintiffs, which provide for counsel to receive one-third of any recovery. (S*ee Garcia*, 2012 WL 5305694, at *8 (the court states that "reasonable, paying clients typically pay one-third of their recoveries under private retainer agreements" as support for approving class counsel's request for one-third of the settlement fund) (internal quotation marks and citation omitted); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 Civ. 3234 (LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving as reasonable a negotiated fee of one-third of the settlement amount, plus costs, in accordance with the retainer agreement); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *2-3 (E.D.N.Y. Nov. 21, 2014) (awarding one-third contingency fees as it was "consistent with [the] [p]laintiffs' retainer agreement with counsel and with the consent to sue form signed by all [of the] [p]laintiffs") (internal quotation marks and citations omitted).)

The Firm has worked a total of approximately 151 hours on this matter as of the date of this submission, which includes approximately 94 attorney hours and 57 paralegal hours. Plaintiffs' Counsel anticipates spending additional time in the future participating in the administration of the settlement, responding to Putative Collective Members' inquiries and handling unexpected issues that will undoubtedly arise. The requested fee award is also meant to compensate for that time. The hours reported are reasonable for a case of this complexity and magnitude and were complied from contemporaneous time records maintained by each attorney participating in the case using the online time tracking service Harvest.

| INDIVIDUAL, POSITION | HOURLY RATE | EST. TOTAL HOURS | FEES |
|---|---|---|---|
| Robert Ottinger, Principal | $550 | 8.50 | $4,675.00 |
| Benjamin Weisenberg, Associate | $450 | 27.93 | $12,568.50 |
| Erica Sanders, Associate | $350 | 48.17 | $16,859.50 |
| Ariel Graff, Former Associate | $550 | 2.50 | $1,375.00 |
| Jose Caceres, Paralegal | $250 | 22.05 | $5,512.50 |
| Daniel Strellman, Paralegal | $250 | 29.28 | $7,320.00 |
| Kathryn Daly, Paralegal | $250 | 5.66 | $1,415.00 |

*Sullivan et al v. Spandex House, Inc. et al*
Case No. 17-cv-05929
February 5, 2018
Page 8 of 8

The Firm's time in this matter is the equivalent of approximately $49,725.50. The Firm's lodestar, therefore, is approximately 3.45. Applying a lodestar analysis here would penalize Plaintiffs' Counsel for acting responsibly on behalf of Named Plaintiffs and Putative Collective Members by obtaining a favorable outcome relatively early. In *Beckman*, the court noted that a relatively low lodestar amount (the fee award was about 6.3 times lodestar) "should not result in penalizing [the] plaintiffs' counsel for achieving an early settlement, particularly where, as here, the settlement amount is substantial." 293 F.R.D. at 482.

The Firm's reasonable fee weighs in favor of approving this Settlement as fair and reasonable.

## **Exhibits**

| | |
|---|---|
| **Exhibit A** | Fully Executed Settlement Agreement |
| **Exhibit B** | [Proposed] Notice Packet |
| **Exhibit C** | Affidavit of Benjamin D. Weisenberg in Support of Settlement |
| **Exhibit D** | The Ottinger Firm's Harvest Records |

\*   \*   \*

The Court, based on the foregoing and the documents annexed hereto, should approve the parties' proposed Agreement as both fair and reasonable in light of the circumstances of this case

Respectfully submitted on behalf of the parties,

**THE OTTINGER FIRM, P.C.**

_____
Benjamin D. Weisenberg
Attorneys for the Plaintiffs

Signed as to the Joint Letter, the Settlement Agreement and the Notice Packet:

_____/s/_____
Scott A. Lucas
Law Offices of Scott A. Lucas
250 Park Avenue, Suite 2020
New York, NY 10177
scott@lucasemploymentlaw.com
Attorneys for the Defendants